UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MARCELUS EDWARD GOODWIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-cv-4117-MMM |
| ) | |
| GLOSSIP, et.al., ) | |
| ) | |
| Defendants. ) | |

### MERIT REVIEW ORDER – AMENDED COMPLAINT

**Michael M. Mihm, U.S. District Judge:**

Plaintiff, proceeding *pro se*, has filed an amended complaint [ECF 14] alleging unconstitutional conditions of confinement and deliberate indifference at the Knox County Jail ("Knox"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

# FACTS

Plaintiff brings his amended complaint against Administrator Glossip, Chief Abernathy, Sargent Dennis, Sargent Mesmore, and Correctional Officers Douglass, Dean, Blaine, Wheeler, Winn, Millard, Countryman, and Williamson.

On January 26, 2021, Administrator Glossip and Chief Abernathy approved Plaintiff's housing placement in a maximum custody housing unit, despite Plaintiff having had no misconduct reports. Upon entering his assigned Amax housing unit, cell #113, the stench of urine and feces engulfed the living quarter. Plaintiff complained about the smell to Correctional Officer Millard, who had escorted him. Millard denied smelling anything.

The next morning, January 27, 2021, fellow inmates informed Plaintiff that the previous cell occupant had smeared his feces and urine all over cell #113. Plaintiff inspected the cell and discovered not only feces, but blood, mold, corrosion, rust, food, dead skin cell particles, and black mold. The food slot also contained some of these materials, as did the emergency call button. When Correctional Officer Winn made his morning rounds in the unit, Plaintiff informed Winn of the conditions of cell #113. Plaintiff complained that he was in an inhumane living quarter, requested to be moved, and to file a grievance. Winn stated he would look into the problem. Winn returned a little later with a food tray. Plaintiff refused to eat the food he brought and said he didn't want to live in the cell, let alone eat in it.

Next, Plaintiff made a sign stating he was going on a hunger strike as a peaceful protest. Winn saw the sign and asked Plaintiff about it. Plaintiff discussed his reasoning for the hunger strike, but clarified that he was only refusing meals provided by the Knox County Jail. At the time he was eating noodles purchased from the commissary and stated he would continue to do

so. At this time, Winn informed Plaintiff he would have to go on suicide watch and walked away.

A few moments later, Correctional Officer Countryman arrived at his cell and asked Plaintiff to consent to medical observation. Plaintiff refused. Sargent Mesmore, Correctional Officer Winn, Correctional Officer Williamson, and Correctional Officer Wheeler then entered the Amax unit. Plaintiff explained his position to Sargent Mesmore, but Sargent Mesmore insisted that medical observation was necessary due to his announced hunger strike. After some more arguing and after some of the correctional officers drew their tasers, Plaintiff consented and was taken to medical observation cell #116. Plaintiff alleges this cell also smelled like feces and urine, but that he did not tell anyone about the conditions. Plaintiff stayed in this cell for 72 hours of observation.

After the 72 hours of observation, Correctional Officer Zaehringer informed him that cell #113 had been cleaned under the supervision of Correctional Officer Hughes. Plaintiff was returned to cell #113. He alleges that the cell had been cleaned, but it still had some feces smeared on it, as well as blood, dust, rusk, corrosion, mold, and dead skin particles. He filed a grievance and alleges he exhausted all remedies. The grievances and requests were directed at Administrator Glossip and Chief Abernathy. All requests and appeals have been denied.

Plaintiff next pleads facts regarding a separate event that resulted in him being tased, which he argues unconstitutional use of excessive force. On February 6, 2021, Plaintiff gave Correctional Officer Gusma a copy of his financial affidavit to be signed by administrative staff and requested that his trust account ledger be sent to the Court. Gusma returned the form without a signature. Plaintiff argued with Gusma and Sargent Dennis about getting the form signed. He was told that he would need a subpoena to get the form signed.

Later, Plaintiff refused to lockdown, believing that this might help him be able to speak to administrators about the document. Correctional Officer Dean entered and demanded Plaintiff lockdown. Plaintiff refused. Sargent Dennis and Correctional Officer Blaine entered the unit. They again told him he would need a subpoena to get the form signed and demanded that he lock down. Plaintiff stated that he was not refusing to lock down, but wanted a signature and a ledger of his account. Correctional Officers Blaine and Dean then attempted to grab him. Dean grabbed Plaintiff by the neck of his jail shirt, which slipped off of Plaintiff. Dean and Blaine began yanking on his limbs, pushing, and shoving him. Correctional Officer Douglass then entered the cell and started to get his taser out. Sargent Dennis told Douglass to holster his taser. Plaintiff alleges he was put on his stomach, as Dean, Blaine, and Douglass assaulted him. While on his stomach, Plaintiff was tased by Douglass twice. Plaintiff was then handcuffed and thrown onto a mattress. As the handcuffs were removed, Plaintiff attempted to turn off of his stomach, when he was tased again in his stomach. Plaintiff had "bubbles in stomach" after the incident and possibly diarrhea.

## ANALYSIS

Based on the Court's review, it appears Plaintiff has attempted raise three sperate claims: a conditions of confinement claim based on the conditions of his cell, a claim regarding his placement in medical observation, and an excessive force claim. As Plaintiff was a pretrial detainee during the events at issue, his claims are reviewed under the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment, and are subject only to an objective unreasonableness standard. *See Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019). Under this standard, Plaintiff must plead: "(1) the conditions in question are or were

objectively serious (or if the claim is for inadequate medical care, his medical condition is or was objectively serious); (2) the defendant acted purposefully, knowingly, or recklessly with respect to the consequences of his actions; and (3) the defendant's actions were objectively unreasonable—that is, 'not rationally related to a legitimate governmental objective or ... excessive in relation to that purpose.'" *Hardeman*, 933 F.3d at 827 (Sykes, J., concurring) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S. Ct. 2466, 2473–74 (2015)). This standard is higher than that required to prove negligence, or even gross negligence and is "akin to reckless disregard." *Miranda,* 900 F.3d at 352.

     Plaintiff has plausibly alleged facts showing that the conditions in his cell were objectively serious both before and after it was cleaned. However, he does not allege that any Defendant knew about the conditions of the cell prior to his placement. Rather, it appears that the prior occupant caused the conditions of the cell. Further, he does not allege that any of the Correctional Officer Defendants caused him to be assigned to his cell, caused the conditions of the cell, or had the authority to reassign his cell. Plaintiff does not allege that he asked these Defendants to bring him cleaning supplies and they refused. Moreover, upon alerting Defendants Winn, Mesmore, Williamson, and Wheeler about the conditions the morning after he arrived, his cell was cleaned while he was on medical observation in a different cell. However, Plaintiff asserts that his cell was insufficiently cleaned. His further allegations about the conditions of the cell were directed only at Administrator Glossip and Chief Abernathy. Plaintiff has also plead that Administrator Glossip and Chief Abernathy had the authority to reassign him and did not do so despite the allegedly serious conditions. On these facts, Plaintiff has stated a Fourteenth Amendment conditions of confinement claim against only Administrator Glossip and Chief Abernathy.

Plaintiff also writes detailed allegations regarding his forced medical observation after informing Defendant Winn he was on a hunger strike. It is clear from the allegations that Plaintiff did not want to be placed on medical observation and that he did not believe it was warranted. However, he has not plead any reason why being placed on medical observation represented a constitutional violation. Plaintiff does not suggest that he was placed on medical observation for any retaliatory reasons or that unconstitutional force was used to make him go to the medical observation cell. Accordingly, the Court finds that Plaintiff has failed plead a claim based on these allegations pursuant to Federal Rule of Civil Procedure 12(b)(6).

Finally, while Plaintiff may have also plead facts to support a Fourteenth Amendment claim for excessive force for the February 6, 2021 incident, *see Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), he cannot bring this unrelated claim in this lawsuit. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants belong in different suits." In other words, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *See Linton v. Godinez*, No. 16-00492, 2016 WL 3055264, at *2 (S.D. Ill. May 31, 2016). "Federal Rule of Civil Procedure 20 allows additional claims against separate defendants only if the additional claims arise 'out of the same transaction, occurrence, or series of transactions or occurrences.'" *Id*. (citing *Wheeler v. Wexford Health Sources, Inc*., 689 F.3d 680, 683 (7th Cir. 2012)).

**IT IS THEREFORE ORDERED:**

1.  According to the Court's Merit Review of Plaintiff's amended complaint under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with a Fourteenth Amendment conditions of confinement claim against Defendant Glossip and Defendant Abernathy.

Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.

2.  The Court DIRECTS the Clerk of the Court to terminate Defendants Dennis, Mesmore, Douglass, Dean, Blaine, Wheeler, Winn, Millard, Countryman, and Williamson as Defendants.

3.  This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel(s) have filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

4.  The Court will attempt service on Defendants by mailing a waiver of service. Defendants have sixty days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

5.  If a Defendant no longer works at the address Plaintiff provided, the entity for whom Defendant worked while at that address shall submit to the Clerk the Defendant's current work address, or, if not known, Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

6.  Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver of service. A motion to dismiss is not an Answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues

and claims stated in this Order. In general, an Answer sets forth Defendants' position. The Court does not rule on the merits of those positions unless and until Defendants files a motion. Therefore, no response to the Answer is necessary or will be considered.

7. This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel(s) will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel(s) copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel(s). Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel(s) has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

8. The Court grants Defendants' counsel(s) leave to depose Plaintiff at his place of confinement. Defendants' counsel(s) shall arrange the time for the deposition.

9. Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

10. If Defendants fail to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants. Formal service will require Defendants to pay the associated costs under Federal Rule of Civil Procedure 4(d)(2).

11.      The Court directs the Clerk to attempt service on Defendants under the standard procedures.

_March 8, 2022_____                                              /s/ Michael M. Mihm  
ENTERED                                                      MICHAEL M. MIHM  
                                                                UNITED STATES DISTRICT JUDGE